MYERS *v.* MYERS.

4-8187                                                    202 S. W. 2d 596

Opinion delivered May 26, 1947.

744

*D. D. Panich,* for appellant.

*Chas. B. Thweatt, H. B. Stubblefield* and *Cooper Thweatt,* for appellee.

HOLT, J. Ed. I. Myers, father of appellee, Lyla Myers, died testate in February, 1938. He left surviving his widow, Effie M., and three children, Rhea B., Correze and Lyla, appellee. Under his will, he left practically all of his property, including a business operated under the name of Ed. I. Myers Company, to his widow, Effie M. Myers.

Mrs. Effie M. Myers took over the business, which she found in debt, and after acquiring and adding a beer distributing business and putting some personal funds into it, she, with the help of her son, Rhea; and Lyla, operated it profitably.

On January 1, 1941, Mrs. Effie M. Myers, Rhea and Lyla entered into the following contract or agreement: "That Ed. I. Myers departed this life in February, 1938, leaving his entire estate, including the business of Ed. I. Myers, to Effie M. Myers, his wife; that she continued the operation of the business and R. B. Myers devoted his entire time and attention to the operation of the business for himself, Effie M. Myers, his mother, and Lyla M. Prather, his sister, who also assists him there.

"That it is desirable to enter into a memorandum for the purpose of dividing any profits from the operation of

the business. That it is mutually agreed that R. B. Myers serve as manager of the business. Lyla M. Prather agrees to perform such services as she may be called upon; that all profits derived from the operation of the business, after paying all expenses, shall be divided as follows: 35 per cent. to Effie M. Myers, 40 per cent. to R. B. Myers, 25 per cent. to Lyla M. Prather.

''That accurate statements of the business shall be furnished to Effie M. Myers at any time she may request such information, and annually; that Ernest E. Long be retained as bookkeeper; that drawing accounts for each of the parties be agreed upon from time to time, to be charged against their respective distribution from the profits; that the agreement remain in full force for a period of five years from date, and thereafter, until rescinded in writing, by one or more of the parties.

''The agreement is dated January 1, 1941, and is signed by Effie M. Myers, R. B. Myers, and Lyla M. Prather (now Lyla Myers).''

They operated under this instrument, dividing all profits as provided therein, until the death of Effie M. Myers July 29, 1944.

Mrs. Myers died testate and under the terms of her will, with the exception of $10 devised to each of her two sons, Rhea B. and Correze, and $1,000 to E. E. Long, a relative and bookkeeper of the company, Lyla Myers was her sole beneficiary.

Following their mother's death, Rhea and Lyla operated the Ed. I. Myers Company until Rhea's death May 1, 1945, under an oral agreement or contract, to operate it on a 50-50 partnership basis.

For approximately one month after Rhea's death, appellant, Grace Myers, Rhea's widow, took charge of the business and operated it until June 1, 1945, when she procured, in her own right, the beer distributing franchise, took over and asserted ownership of all the assets of the Ed. I. Myers Company, and began operating under the name of ''Country Club Distributing Company.''

Mrs. Ed. I. Myers on July 1, 1943, signed and delivered a bill of sale reciting a transfer to Rhea B. Myers of all her right and interest in the Ed. I. Myers Company for a recited consideration of $10 "and other good and valuable consideration."

Prior to the filing of the present suit the parties, in an effort to settle their interests in the Ed. I. Myers Company, entered into a written contract whereby Grace Myers placed $30,000 in a Little Rock bank to secure appellees' interests. It was agreed that an audit of the books and records of the company should be made and to this end, an accountant was employed and paid a fee of $1,050, out of this $30,000 fund, which left a balance of $28,950. The audit dated September 14, 1945, showed the interests of the parties as of May 31, 1945, to be as follows: "Estate of Mrs. Ed. I. Myers—$8,999.81, Estate of R. B. Myers—$31,605.92, Lyla Myers—$32,906.49, Total —$73,512.22."

Following this audit, the parties were still unable to agree upon a settlement of their interests and this suit was filed August 30, 1945, by Lyla Myers, individually and as sole devisee (except $1,020) and as executrix of the estate of her deceased mother, Mrs. Ed. I. Myers, against Grace Myers individually and as sole devisee (except $200) and as executrix of the estate of her deceased husband, Rhea B. Myers, to recover appellees' interests in the assets of the Ed. I. Myers Company.

Appellees sought an accounting, the appointment of a receiver, payment of all debts, division of assets and for all proper relief. Appellants answered with a general denial. After an extended hearing, the trial court found, in effect, that the instrument signed by Mrs. Effie Myers, Rhea B. and Lyla on January 1, 1941, was a contract creating a partnership arrangement under which they operated until Mrs. Effie Myers' death July 29, 1944; that the bill of sale, *supra,* was canceled by mutual agreement of Mrs. Effie Myers and her son, Rhea, soon after it was signed; that they never operated under it and that it never went into effect, and "that the sole consideration

for said bill of sale was a note for $3,500 signed by Rhea B. Myers, payable to Mrs. Ed. I. Myers, 120 days after date, which note was not paid, was treated of no effect and destroyed''; that following Mrs. Effie Myers' death, Lyla and Rhea entered into an oral partnership agreement under which they owned and operated the Ed. I. Myers Company, each receiving one-half of the profits, until Rhea died May 1, 1945, and thereafter that Grace Myers operated said business until June 1, 1945.

The court further found that the parties on June 2, 1945, entered into the contract as above, wherein appellants placed $30,000 in a local bank for the purpose of securing appellees' interests; that thereafter the parties agreed that appellants might retain all assets of the Ed. I. Myers Company, except the $28,950, *supra,* and that appellants would pay in cash any amounts adjudged to be the value of appellees' interests and fixed a first lien on the assets of the business in appellees' favor.

It further found the interests of the parties to be as that found by the auditor and set out in his report, *supra.*

Accordingly, the court decreed that Lyla Myers, as executrix of the estate of Mrs. Effie Myers, deceased, have judgment against appellants in the amount of $8,999.81, and that Lyla Myers, in her own right, have judgment against appellants in the amount of $32,906.49, and that appellees ''have a specific lien on the fund of $28,950 and on all assets of the business, to secure the payment of the judgments.''

From the decree comes this appeal.

Appellants say that ''the sole question presented is whether or not there existed a partnership between R. B. Myers, during his lifetime, and his sister, Lyla Myers, in the operation of the business known as 'Ed. I. Myers Company.' ''

They argue that no partnership existed and in support thereof ''that R. B. Myers purchased the business of Ed. I. Myers Company from his mother, Mrs. Effie M.

Myers, on July 1, 1943, by bill of sale, for a valuable consideration,'' and that appellants owned the business thereafter.

The trial court found from the competent testimony before it that there was a partnership, first among Mrs. Effie Myers, Rhea and Lyla, and between Rhea and Lyla after Mrs. Effie Myers' death, and that this bill of sale, upon which appellants rely, was rescinded by Rhea and his mother by mutual agreement and never became effective.

A large amount of testimony was introduced by the parties on the question of a partnership and whether this bill of sale had been rescinded. Much of this testimony was conflicting, and some incompetent, as was held by the court and admitted for the record only. However, the following significant acts of the parties, which in the circumstances speak louder than words, are undisputed:

After the bill of sale was executed July 1, 1943, Mrs. Effie Myers, Rhea and Lyla continued to operate the business under the contract of January 1, 1941, until Mrs. Effie Myers' death, July 29, 1944, dividing the profits among them on a basis of 35 per cent., 40 per cent. and 25 per cent., as the contract provided, and following Mrs. Myers' death, Rhea and Lyla continued to operate the business on an oral partnership basis of 50 per cent. of the profits to each.

There was no change in the method by which the books and records of the Ed. I. Myers Company were kept following the date of the bill of sale.

From the date of the January 1, 1941, contract until Rhea B. Myers died May 1, 1945, returns for Federal income tax purposes were made to the Government by Rhea B. Myers on a partnership basis.

When these facts, along with the remaining testimony, are considered, we cannot say that the findings of the Chancellor that the bill of sale in question was rescinded and never became effective and that the parties

operated as a partnership are against the preponderance of the testimony.

In *Afflick* v. *Lambert,* 187 Ark. 416, 60 S. W. 2d 178, this court said: ''It is well settled that the parties to a contract may at any time rescind it in whole or in part by mutual consent, and the surrender of their mutual rights and the substitution of new obligations is a sufficient consideration,'' and in the more recent case of *Ferguson* v. *C. H. Triplett Company,* 199 Ark. 546, 134 S. W. 2d 538, we said: ''The law is settled in this state that while parol testimony cannot be received to vary the terms of a written contract, parol testimony is admissible to show that the written contract has been rescinded and an oral contract made. It is frequently impossible to show that a contract had been abandoned and a new one made, except by oral testimony.''

We conclude, therefore, that on the whole case the findings of the court are not against the preponderance of the testimony and accordingly, the decree thereunder should be, and is, in all things affirmed.